FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

99 FEB 17 PM 2: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

DONALD M. RUSSELL,                    )
                                      )
        Plaintiff,                    )
                                      )
    vs.                               )        CV-96-BU-2278-M
                                      )
M.E. HOLCOMB, ET AL.,                 )
                                      )
        Defendants.                   )

**ENTERED**

FEB 17 1999

═══════════════════════════════════════════════════════════

MEMORANDUM OPINION

═══════════════════════════════════════════════════════════

Plaintiff Donald M. Russell filed this action alleging that Defendant Robert Norwood

arrested him in violation of his constitutional rights and that he was detained in the Marshall County

Jail in violation of his constitutional rights. Mr. Russell, who is proceeding pro se, named as

defendants: (1) Officer Norwood in his official and individual capacities; (2) Sheriff M. E. Holcomb,

in his official and individual capacities; and (3) Sheriff Edsel Whitten, in his individual and official

capacities. Defendants filed a Motion for Final Summary Judgment (Doc. 26), alleging that they

were entitled to judgment as a matter of law on all of Mr. Russell's claims.

For the reasons set forth below, Defendants' Motion for Final Summary Judgment is due to

be granted in part and denied in part.

FACTS

Mr. Russell's claims arise from incidents surrounding his arrest by Officer Norwood and Mr.

Russell's detention at the Marshall County Jail following that arrest.



Mindy Stanley, Mr. Russell's daughter, called the Marshall County Sheriff's Department to report that her father had taken her automobile from in front of her house without her permission. Def. Exh. D (Norwood Depo.), pp. 6-8; Def. Exh. F (Incident Report), p. 2. Officer Norwood took the call and went to Ms. Stanley's house. While he was there Ms. Stanley told him that her father had threatened to kill her and her husband, as well as himself. Def. Exh. D (Norwood Depo.), pp. 20-22; Def. Exh. F. She also told Officer Norwood that Mr. Russell had been following her for a week or more. Def. Exh. D (Norwood Depo.), p. 21. Moreover, she told Officer Norwood that her father was armed. *Id.* at 26; Def. Exh. F.

While Officer Norwood was taking Ms. Stanley's statement, Mr. Russell called Ms. Stanley. Def. Exh. D (Norwood Depo.), p. 7. Officer Norwood spoke with Mr. Russell and told him to bring the car back. *Id.* During this conversation, Mr. Russell told Officer Norwood that he had taken the car as "leverage to have an opportunity to talk to [Ms. Stanley]. *Id.* at 22. Mr. Russell arrived at Ms. Stanley's house and Officer Norwood arrested him for unauthorized use of a motor vehicle. *Id.* at 17. Officer Norwood arrested Mr. Russell because he believed it was "necessary for everybody's safety." *Id.* at 17. While being arrested, Mr. Russell attempted to show Officer Norwood that he owned the car with his daughter by showing him the tag receipt. Pla. Exh. C (Aff. of Evelyn Russell). Officer Norwood slapped away the receipt and would not look at it. *Id.*

Officer Norwood charged Mr. Russell with unauthorized use of a motor vehicle and took him to the Marshall County Jail. Mr. Russell was kept overnight. *Id.* When his family went to get him out the next day, someone working at the jail told them that Mr. Russell was not there. *Id.* The family was told to go to the district attorney's office. *Id.* Once there, the district attorney directed the family back to the jail. *Id.* At the jail the second time, the family was informed that Mr. Russell

was there and that "they" were trying to get in touch with Ms. Stanley "to sign some papers." *Id.* Ms. Stanley also talked to Sheriff Whitten, who told her "to get the car out of my father's name and if he tried to come get it they would arrest him."[1] Pla. Exh. D (Aff. of Richard Russell).

No case was filed against Mr. Russell. Def. Exh. D (Norwood Depo.), pp. 23-24. He was never prosecuted for unauthorized use of a motor vehicle.

Sheriff Edsel Whitten was the Marshall County Sheriff at the time Russell was arrested and detained. Def. Exh. A (Donald Russell Depo.), pp. 49, 62. Sheriff M.E. Holcomb is his successor in office. *Id.* at 45.

## SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is weighed heavily in favor of the non-moving party; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1]This statement from Richard Russell's affidavit is double hearsay. However, it is considered for limited purposes of demonstrating that Mr. Russell alleges Sheriff Whitten did something after Mr. Russell was arrested. How this conduct rises to the level of a constitutional violation is unclear.

242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The moving party's burden is not meager; it must illuminate for the court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose interpretation of the evidence will not satisfy the non-moving party's burden. *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S. Ct. 2965, 119 L. Ed. 2d 586 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, Fed. R. Civ. P. 56(c), the Rule "saddles the non-movant

with the duty to 'designate' the specific facts in the record" supporting its claims. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

DISCUSSION

    I.    M.E. HOLCOMB

        A.    OFFICIAL CAPACITY CLAIMS

The claims against Sheriff Holcomb in his official capacity are claims against the State of Alabama. The Marshall County Sheriff is an official of the State of Alabama, not Marshall County. *McMillian v. Johnson*, 88 F.3d 1573, 1580-81 (11th Cir. 1996)(citations omitted), *aff'd sub nom.*, *McMillian v. Monroe County*, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997 ). Because Holcomb, as Marshall County Sheriff, is a State official, this action against him -- in his official capacity -- is the same as an action against the State of Alabama. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)(a suit against a public official in his official capacity is -- in all respects -- one against the entity he represents). Suits against the State that seek money damages are barred by the Eleventh Amendment to the United States Constitution.[2] This suit seeks only money damages; therefore it is barred by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 67-68, 106 S. Ct. 423, 425-26, 88 L. Ed. 2d 371 (1985).

        B.    INDIVIDUAL CAPACITY

Defendants contend that because he was not sheriff at the time of the incident made the basis of this lawsuit, *see* Def. Exh. A (Russell Depo.), p. 45, Holcomb is not liable. Holcomb's complete

---

[2] The Eleventh Amendment of the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "Although not readily apparent from the amendment's text, it has long been settled that the amendment applies equally to suits against a state brought in federal court by citizens of that state." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998)(citing *Hans v. Louisiana*, 134 U.S. 1, 18-19, 10 S. Ct. 504, 508, 33 L. Ed. 842 (1890)).

lack of involvement in the incident relieves him of liability in his individual capacity. *Wright v. Sheppard*, 919 F.2d 665, 673 (11th Cir. 1990).

Therefore, based on the foregoing, the claims against Sheriff Holcomb in his individual and official capacity are due to be dismissed.

II.     OFFICER ROBERT NORWOOD

A.     OFFICIAL CAPACITY

Officer Norwood is entitled to Eleventh Amendment Immunity in his official capacity as a deputy sheriff. *See, supra.*

B.     INDIVIDUAL CAPACITY

1.     FALSE ARREST

Officer Norwood asserts that he has qualified immunity for the claims asserted against him in his individual capacity.

Government officials exercising a discretionary function are entitled to qualified immunity from damages unless their acts or decisions contravene clearly established constitutional or statutory rights of which a reasonable official should have knowledge. *See Mitchell v. Forsyth*, 472 U.S. 511,526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The "contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 636, 641, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). As the Eleventh

Circuit has explained, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates the law *in the circumstances.*" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (emphasis in original), *quoted in McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995). Where the act or decision complained of was within a government official's discretionary function, the burden of proof is on the plaintiff to demonstrate that the official violated clearly established constitutional law. *See Sammons v. Taylor*, 967 F.2d 1533, 1539 (11th Cir. 1992) (citing *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)); *McCoy v. Webster*, 47 F.3d at 407. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826-27 n.4 (11th Cir.), *cert. denied*, U.S. , 118 S. Ct. 412, 139 L. Ed. 2d 315 (1997 ), *quoted in Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998).

However, the "burden of proving the law to be clearly established [cannot be met] by stating constitutional rights in general terms." *Flores v. Satz*, 137 F.3d 1275, 1277 (11th Cir. 1998) (*quoting Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir. 1996). The law must be such that the conduct of the defendants "violates the law *in the circumstances.*" *Lassiter*, 28 F.3d at 1150 (emphasis added).

The Eleventh Circuit has held:

> It is clearly established that an arrest made without probable cause violates the Fourth Amendment. An officer is entitled to qualified immunity, however, where the officer had "arguable probable cause," that is, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff[ ].

Page 8 of 17

*Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)(quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).

Officer Norwood arrested Mr. Russell without a warrant. The Alabama Uniform Incident/Offense Report indicates that Officer Norwood arrested Mr. Russell for "unauthorized use of a motor vehicle." Def. Exh. F.[3] Nevertheless, Officer Norwood testified that he arrested Mr. Russell because "[u]nder the circumstances, [he] believe[d] the arrest was necessary for everybody's safety that night." Def. Exh. D (Norwood Depo.), p. 17. He testified, "According to the victim, the fact that you had been stalking, you had made threats against the husband, the husband couldn't even be at the house that night because of fear for his life. I felt like the situation needed to be diffused for your safety, for your -- the rest of your family's safety, and for the husband of your [daughter] . . . . ." *Id.* at 17-18. He also testified that Mindy had told him that her father was armed. *Id.* at 20.

Alabama law provides:

(a) An officer may arrest a person without a warrant, on any day and at any time in any of the following instances:

(1) If a public offense has been committed or a breach of the peace threatened in the presence of the officer.

(2) When a felony has been committed, though not in the presence of the officer, by the person arrested.

(3) When a felony has been committed and the officer has reasonable cause to believe tat the person arrested committed the felony.

---

[3]Mr. Russell submitted as evidence a document entitled, "Marshall County Sheriff's Office Arrest Ticket – Sheriff Edsel Whitten." Plaintiff Exh. B. The copy given to the Court is illegible; however, it does not appear to be disputed that the arrest ticket shows "unauthorized use of a motor vehicle" as the charge asserted against Mr. Russell.

(4) When the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that the a felony had not in fact been committed.

(5) When a charge has been made, upon reasonable cause, that the person arrested has committed a felony.

(6) When the officer has actual knowledge that a warrant for the person's arrest for the commission of a felony or a misdemeanor has been issued, upon request the officer shall show the warrant to the arrested person as soon as possible. If the officer does not have the warrant in his or her possession at the time of arrest the officer shall inform the defendant of the offense charged and of the fact that a warrant has been issued.

(7) When the officer has reasonable cause to believe that a felony or misdemeanor has been committed by the person arrested in violation of a protection order issued by a court of competent jurisdiction.

(8) When an offense involved domestic violence as defined in this section and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor.

Ala. Code § 15-10-3.

It appears from the record that there is a significant question as to whether Officer Norwood had arguable probable cause to arrest Mr. Russell for unauthorized use of a vehicle. Officer Norwood testified that he, at the time he arrested Mr. Russell, "perceived . . . that [Mindy] was in constructive possession of the vehicle that she was part owner of, if not all owner of; [and] that [Mr. Russell had taken] it without her permission out of her yard. Def. Exh. D (Norwood Depo.), pp. 22-23. However, Mr. Russell has submitted evidence that supports his claim that he tried to show Officer Norwood the tag receipt, which proved that he was the owner -- or one of the owners of the car, and Officer Norwood refused to look at it. Pla. Exh. C. For purposes of summary judgment, it appears that Officer Norwood intentionally refused to look at or consider evidence that may have exonerated Mr. Russell on the charge of unauthorized use of a motor vehicle. *Cf. Sanders v.*

*English*, 950 F.2d 1152, 1162 (5th Cir. 1992)(holding officer may be liable under § 1983 deliberately looking the other way in the face of exonerative evidence).[4]

However, the lack of arguable probable cause to arrest Mr. Russell for unauthorized use of a motor vehicle does not end the inquiry. "[T]he legality of an arrest may be established by proving that there was probable cause to believe that the plaintiff had committed a crime other than the one with which he was eventually charged, provided that the crime under which the arrest was made and the crime for which probable cause exists are in some fashion related." *Gassner v. City of Garland, Texas*, 864 F.2d 394, 398 (5th Cir. 1989)(quoting *Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir. 1982) (quoting *United States v. Atkinson*, 450 F.2d 835, 838 (5th Cir. 1971), *cert. denied*, 406 U.S. 923, 92 S. Ct. 1790, 32 L. Ed. 2d 123 (1972)(quoting *Mills v. Wainwright*, 415 F.2d 787 (5th Cir. 1969))))(internal quotations omitted). Therefore, the inquiry is "whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause." *Id.* (quoting *Trejo*, 693 F.2d at 486). Thus, even if there was not probable cause to arrest Mr. Russell for unauthorized use of a motor vehicle, proof of probable cause to arrest him for a related offense would entitle Officer Norwood to qualified immunity. *See Biddle v. Martin*, 992

---

[4]There is also a question as to whether there was arguable probable cause for a warrantless arrest for unauthorized use of a motor vehicle. For example, it appears from the testimony that Norwood may have arrested Mr. Russell on the charge of his daughter, and not because the offense was committed in his presence. See Ala. Code § 15-10-3. An officer can arrest someone without a warrant if the officer has probable cause and the offense charged is a *felony*. Unauthorized use of a motor vehicle, without the use of force, is a misdemeanor. Ala. Code. § 13A-8-11(a)(4). There is no allegation that Mr. Russell has assumed possession of the car through force or the threat of force; thus, his conduct was only a misdemeanor.

F.2d 673, 676 (7th Cir. 1993)(citing *Richardson v. Bonds*, 860 F.2d 1427, 1430-1431 (7th Cir. 1988).

Officer Norwood testified that he arrested Mr. Russell due his perception of a threatening and potentially dangerous domestic situation. The Incident/Offense Report indicates the same; it states:

> Victim [Mindy Stanley] saw her father take her car from her front yard. This was done without permission of said victim. During phone conversation with Don Russell he stated to me that he did take the car. But just wanted to talk to his daughter and was using it as leverage.[5]

> Victim states that he [Mr. Russell] does have a gun and has threaten[ed] her husband's life and the victim's life while mentioning suicide. A double homicide, suicide of sorts.

Def. Exh. F.

Alabama law provides for warrantless arrest "[w]hen an offense involved domestic violence as defined in this section and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor." Ala. Code § 15-10-3(a)(8). "Domestic violence" is defined as "Any incident resulting in the abuse, assault, harassment, or the attempt or threats thereof, between family, household, or dating or engagement relationship members." *Id.* (b)(4). The facts of this case show that Officer Norwood – at the time he arrested Mr. Russell – had credible evidence that Mr. Russell had threatened to kill his daughter and her husband.

_____

[5]Officer Norwood testified in his deposition that Mr. Russell had told him that he had taken the car for "leverage to have an opportunity to talk to [Mindy]." Def. Exh. D (Norwood Depo.), p. 22. Mr. Russell responded, "Mr. Norwood, that's not true, is it?" *Id.* Officer Norwood replied, Yes, it is." *Id.* It is axiomatic that questions, or facts contained in questions, are not evidence, the question may be considered only as it gives meaning to the answer. The Court notes that in the materials submitted in opposition to summary judgment Mr. Russell does not deny that he told Officer Norwood that he had taken the car as leverage.

"Probable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that Mr. Russell had threatened to kill his daughter and her husband. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991). The record contains evidence that Mindy Stanley told Officer Norwood that her father, Mr. Russell, had threatened to kill her and her husband.  Officer Norwood testified that he believed Mindy's statements and there is no evidence in the record to indicate that his trust in her statement was unreasonable. Based on Mindy's statements, a reasonably competent police officer, with knowledge of the facts actually known by the arresting officer, would have concluded that probable cause existed to arrest.  Thus, this Court finds that Officer Norwood is entitled to qualified immunity as to the false arrest claim.[6]

## 2.   WRONGFUL DETENTION

From the record, it is undisputed that Officer Norwood had no part in the detainment of Mr. Russell other than he was the arresting officer, for which he is entitled to qualified immunity.  Def. Exh. D (Norwood Depo.), pp. 10, 27.  There being no allegation that Officer Norwood was responsible in any way for the alleged unlawful detention of Mr. Russell, the claim against him is due to be dismissed.

---

[6]The fact that Mr. Russell was released from jail and not prosecuted does not affect this Court's determination that arguable probable cause existed to arrest him. *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979); *Pickens v. Hollowell*, 59 F.3d 1203, 1208 (11th Cir. 1995).

III.    SHERIFF EDSEL WHITTEN

A.    OFFICIAL CAPACITY

Sheriff Whitten is sued in his individual capacity and his official capacity as Sheriff of

Marshall County. As stated above, a suit against a public officer in his "official capacity" is a suit

against the office. Pursuant to Rule 25, Federal Rules of Civil Procedure, Sheriff Holcomb was

substituted automatically for Sheriff Whitten, in his official capacity, when he succeeded Sheriff

Whitten as Sheriff of Marshall County. Fed. R. Civ. P. 25(d)(1)("When a public officer is a party

to an action in his official capacity and during its pendency . . . ceases to hold office, the action does

not abate and the officer's successor is *automatically* substituted as a party.")(emphasis added).

Thus, any claim against Sheriff Whitten in his official capacity as Sheriff of Marshall County ceased

to exist when Sheriff Whitten left office.

B.    INDIVIDUAL CAPACITY

1.    FALSE ARREST

Sheriff Whitten was also sued in his individual capacity. "[W]hen supervisory liability is

imposed, it is imposed against the supervisory official in his individual capacity for his own culpable

action or inaction in the training, supervision, or control of his subordinates." *Clay v. Conlee*, 815

F.2d 1164, 1170 (8th Cir. 1987). Moreover, the misconduct of the subordinate must be

"affirmatively link[ed]" to the action or inaction of the supervisor. A supervisor can be held liable

"if a causal connection is shown between his actions and the deprivation of the plaintiff's

constitutional rights." *Busby v. City of Orlando*, 931 F.2d 764, 782 (11th Cir. 1991).

Mr. Russell asserts that Sheriff Whitten negligently retained Officer Norwood. Mr. Russell

testified in his deposition that Sheriff Whitten "was negligent in allowing an officer like Robert

Page 14 of 17

Norwood to remain on the force when in [Mr. Russell's] opinion, Mr. Norwood should have been receiving some treatment." Def. Exh. A (Donald Russell Depo.), p. 49. When asked why he believed that Mr. Norwood needed treatment, Mr. Russell responded that he thought "Mr. Norwood had become addict[ed] to a controlled substance." *Id.*

The record contains no evidence to indicate that Sheriff Whitten knew that Officer Norwood had any controlled substance addiction. Moreover, there is no evidence tying Officer Norwood's alleged addiction to the events alleged in this lawsuit. Therefore, Sheriff Whitten is entitled to summary judgment as to any responsibility for Officer Norwood's conduct.

2.    WRONGFUL DETENTION

The Court notes that Mr. Russell's Complaint also contains allegations that he was held at the Marshall County Jail in violation of his constitutional rights. Complaint ¶¶ 11, 15, 19, 24. Also, the facts surrounding this claim are referenced in Plaintiff's position statement in the Pretrial Order, which states:

> Mr. Russell was denied a phone call or to make bond that evening. He was locked up and held until the next afternoon. His family was told he was not at the jail. Sometime later the woman dispatcher told them he was there but they were trying to get in touch with Mindy Stanley to sign papers. Mindy was called and did go and meet Sheriff Whitten. Later Mindy and Joe Stanley got back together and both met with Sheriff Holcomb.

Pretrial Order, p. 3 (Doc. 38).

Mr. Russell has not clearly articulated any right protected by the United States Constitution or other federal law that Sheriff Whitten violated or caused to be violated by Mr. Russell's detention in the Marshall County Jail following his arrest. However, Defendants did not address the wrongful detention claim in their brief in support of their Motion for Final Summary Judgment. The Court

Page 15 of 17

finds that Mr. Russell did not have adequate notice that this claim, as opposed to the false arrest claims, was the subject of Defendants' Motion for Summary Judgment. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989). For this Court to enter a summary judgment on this claim would be to enter a summary judgment *sua sponte* without notice to the losing party – in this case a pro se party – to come forward with all his evidence. *See Tavery v. United States*, 32 F.3d 1423, 1427 n.5 (10th Cir. 1994). Although this Court doubts that Mr. Russell can allege and prove a § 1983 claim based on the facts surrounding his detention, this Court will not enter a summary judgment without notice.

However, this Court is skeptical that the circumstances surrounding Mr. Russell's detainment can support a § 1983 claim against Sheriff Whitten. However, the Court notes that the pleading and the pretrial order are woefully vague and indefinite regarding the false imprisonment/detention claim against Sheriff Whitten. The ONLY reason that this claim is not dismissed is that Defendants did not seek a summary judgment on this claim. However, the pleadings are insufficient to require Sheriff Whitten to go to trial on this claim without an opportunity to challenge the claim on grounds of qualified immunity. *See GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1369 (11th Cir. 1998).

Therefore, in a separate order, this Court will order Mr. Russell to re-plead ONLY his detention claim against Sheriff Whitten, alleging -- with specificity -- what rights were violated during his detention, how and by what act those rights were violated, what Sheriff Whitten did that caused his rights to be violated and/or caused others to violated his rights. Failure to plead with the required specificity may result in the dismissal of this claim.

CONCLUSION

Based on the foregoing, the Court finds that Defendants' Motion for Summary Judgment is due to be granted as to all claims against all Defendants, except for the claim against Sheriff Whitten in his individual capacity for false imprisonment. This claim is not dismissed ONLY because the defendants failed to address it in their motion for summary judgment and supporting materials.

Therefore, the Court will enter an order contemporaneous herewith dismissing all claims against Sheriff Holcomb and Officer Norwood; dismissing the false arrest claim and all official capacity claims against Sheriff Whitten.

DONE this 17th day of February, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE

SCANNED
FEB 1 2 1999